**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES ANTHONY GREENE,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANDREW BLOOM,<br>K-MART CORPORATION,<br><br>    Defendants.<br>_____/ | Case No. 1:06-cv-01508 TAG<br><br>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Doc. 29) |

Charles Anthony Greene ("Plaintiff") is proceeding pro se in this civil rights action, 42 U.S. § 1983. (Doc. 1). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to proceed before the United States Magistrate Judge, and, by an order dated March 28, 2007, this action was assigned to the Magistrate Judge for all further proceedings. (Doc. 23). Pending before this Court is a joint motion for summary judgment or summary adjudication filed by the Defendants, Andrew Bloom ("Mr. Bloom") and K-Mart Corporation ("K-Mart") (collectively "Defendants"). (Doc. 29). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). At the hearing on the motion, Plaintiff appeared personally and counsel Ronald C. Homan appeared telephonically on behalf of the Defendants. (See Dkt. Entry 41, Minute Order). Having considered the oral arguments, the moving papers, and the Court's file, the Court issues the following memorandum opinion and order.

**FACTUAL BACKGROUND**[1]

The event giving rise to Plaintiff's civil rights complaint occurred on November 12, 2004, when Mr. Bloom, then the manager of the K-Mart store located at 3600 Wilson Road, Bakersfield, California (the "Store") effected a citizen's arrest of Plaintiff for trespassing. (Doc. 1; Doc. 30, Defendants' Statement of Undisputed Material Facts ("DUMF") 2:6-9; 3:19-25; 5:22-26, ). Beginning on or about November 1, 2004, Plaintiff twice had solicited for donations in front of the Store on behalf of Helping Hands Outreach, a nonprofit organization that was not affiliated with K-Mart. (DUMF 2:14-17, 25-27). On both of these occasions, Mr. Bloom and K-Mart employees informed Plaintiff of K-Mart's "no solicitation" policy, which policy was posted on the Store's only customer entrance and exit doors. (DUMF 2:19-25; 3:2-6, 12-13; 4:27-28; 6:27-28). On both of these occasions, Plaintiff was informed that he was not permitted to be there, and on both occasions, Plaintiff covered his ears and refused to leave. (DUMF 2:13-27, 3:1-6). On November 12, 2004, Plaintiff was soliciting charitable donations in front of the Store's entrance. (DUMF 3:6-9). Mr. Bloom informed Plaintiff that K-mart had a "no-solicitation" policy. (DUMF 3:9-11). The "no solicitation" policy was posted at the entrance and exit to the Store. (DUMF 3: 12-13). Mr. Bloom had the Store's loss prevention officer call the Bakersfield Police Department ("BPD") to report that a solicitor refused to leave the Store premises. (DUMF 3:14-16). A BPD officer responded to the scene, and indicated that if Plaintiff continued to refuse to leave, Mr. Bloom could place Plaintiff under a citizen's arrest for trespassing. (DUMF 3:17-19). Mr. Bloom executed a citizen's arrest of Plaintiff for trespassing on the Store's premises, which the BPD Officer honored and prepared an arrest report charging Plaintiff with trespassing in violation of § 602 of the California Penal Code. (DUMF 3:6-7, 19-22; Doc. 31, Decl. of Gene Stone, Ex. A-1(a)). The BPD brought Plaintiff to the Kern County Jail, booked him for misdemeanor trespass, and released him approximately eight to nine hours later. (DUMF 3:23-25).

---

[1] The undisputed facts are culled from Defendants' Separate Statement of Undisputed Facts (Doc. 30). Because Plaintiff failed to present a verified complaint or declaration under oath that would support his statement of facts, or provide admissible exhibits, his statement of undisputed facts is insufficient to dispute those of Defendants. See Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, n.11, 106 S. Ct. 1348 (1986); (Docs. 1, 33, 34); (see also "Summary Judgment Standards" below).

On December 3, 2004, Plaintiff was arraigned for the November 12, 2004, misdemeanor trespass charge. (DUMF 7:14-17). On February 14, 2005, Plaintiff proceeded to jury trial for this charge and for two other misdemeanor trespass charges. (DUMF 7:18-22). On February 22, 2005, the jury returned verdicts of guilty on all counts. (DUMF 7:22-23). On September 12, 2005, the appellate court reversed the conviction related to the November 12, 2004 trespassing charge, and affirmed the remaining two convictions. (DUMF 7:24-26; Doc. 31, Ex. A-1(b)).

On October 26, 2006, Plaintiff filed this unverified pro se complaint seeking monetary and punitive damages. He alleges two claims. First, a 42 U.S.C. § 1983 claim predicated on an alleged violation of his free speech rights under the First and Fourteenth Amendments. (Doc. 1, pp. 1, 8). Second, a claim for false arrest.[2] (Doc. 1; DUMF, 3:26-27, 4:2-6). Plaintiff's complaint alleges that he was deprived of the aforesaid rights when, on November 12, 2004, Mr. Bloom effected an unlawful arrest based on Plaintiff's "free speech" solicitation of charitable donations at the Store, which was open to the general public. (Doc. 1, 4:1-3). In contrast, Defendants contend that the Store is a single store and not part of a mall or the type of shopping center where people would congregate and, thus, Plaintiff was not entitled to solicit donations in front of the Store. (DUMF 4:7-28, 5:3-4, 9-11). Plaintiff asserts that the Defendants became liable for damages under §1983 when his conviction for the November 12, 2004, misdemeanor trespass was reversed on appeal. (Doc. 1, 4:27, 5:1-6, 6:19-22; see DUMF 6:2-10).

## SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed R. Civ. P. 56; Celotex Corp v. Catrett, 477 U.S.

---

[2] The complaint also alleges "[e]qual rights under law United States Code Service (USCS) Title 42 1981." (Doc. 1, pp. 2, 8, 11). 42 U.S.C. § 1981 prohibits discrimination. Plaintiff does not allege that he was deprived of any right, which under similar circumstances, would have been accorded a person of a difference race. Plaintiff's reference to § 1981 does not state a § 1981 claim or any of its elements. In addition, Plaintiff's opposition to the summary judgment motion refers to malicious prosecution; however, the complaint does not include a claim for malicious prosecution. Wallace v. Kato, __ U.S. __, 127 S.Ct. 1091, 1096 (2007); Collins v. City of Sacramento 2007 WL 2972908, *8-9 (E.D.Cal. 2007). (Doc. 1, Doc. 33, 9:27-28, 10:20-26; Dkt. Entry dated March 14, 2008). Because Plaintiff failed to include a malicious prosecution claim in his complaint, this Court will not address Plaintiff's argument.

317, 322, 106 S. Ct. 2548 (1986). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Materiality is determined by the substantive law governing a claim or defense. T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 620 (9th Cir. 1987). A fact is material if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id.. If the moving party meets his initial burden, the nonmoving party must present specific facts demonstrating a genuine factual issue for trial. Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).

To demonstrate a genuine factual issue, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." T.W. Elec., 809 F.2d at 630. The nonmoving party must produce at least some significant probative evidence tending to support the complaint." Id. "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

When deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. All justifiable inferences must be drawn in the nonmoving party's favor. Id. The evidence presented by both parties must be

4

admissible. Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  <u>Thornhill Publishing Co., Inc. v. General Tel. & Electronics Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, the Court may not "find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony.'"  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F. 3d 1054, 1062 (9th Cir. 2002) (citations omitted).

**Defendants' Motion**

Defendants assert that they are entitled to judgment as a matter of law because 1) Plaintiff had no constitutional right to solicit in front of the Store; 2) Plaintiff's claims are untimely; 3) Plaintiff's claim of unlawful arrest is barred by collateral estoppel; and 4) Mr. Bloom had the proper authority to effect a citizen's arrest upon Plaintiff.  Each argument will be addressed in turn.

**Plaintiff's Opposition**

In response to Defendants' motion, Plaintiff filed a pleading entitled "Plaintiff's Motion for Summary Judgement," contending that Defendants are not entitled to summary judgment.  (Doc. 33). Despite its title, the Court construes this pleading as Plaintiff's opposition to Defendants' motion for summary judgment.  The opposition consists of a 15-page legal argument, and attaches 85 pages of exhibits. The exhibits consist of copies of state penal codes, case annotations, a newspaper article, on-line dictionary definitions, a City of Bakersfield business tax certificate for Helping Hands Outreach, Mr. Bloom's deposition transcript, and copies of two photographs. The newspaper article and on-line dictionary definitions are not admissible evidence.  The copies of the photographs have not been authenticated and likewise are not admissible in evidence.  The penal codes and case annotations will be considered as part of Plaintiff's legal argument in opposition to the motion.

Plaintiff filed an additional pleading entitled "Declaration of Charles Anthony Greene in Support of Plaintiff's Motion for Summary Judgement Against the Defendant's Alternative, Summary Adjudication." (Doc. 34).  The declaration declares that "at the time of the incident on November 12, 2004, the the (sic) plaintiff broke no State or Federal law while engaged in the said free speech activity, which was located in a shopping center/shopping mall, and that the plaintiffs (sic) conduct offended no one." (Doc. 34, p. 2).  Except for Plaintiff's statement to the effect that he

was in a shopping center or mall on November 12, 2004, the declaration contains only conclusory, speculative statements and legal arguments. The declaration has not been signed under penalty of perjury and is not admissible evidence.

Plaintiff also filed a pleading entitled "Plaintiff's Separate Statement of Undisputed Facts in Support of Motion of Summary Judgment Against the Defendants Motion for Alternative, Summary Adjudication." (Doc. 35). This pleading list three issues, couched as legal arguments, and identifies no evidence. Plaintiff's "Separate Statement" does not comply with the requirements of Local Rule 56-260.

Even though Plaintiff has not complied with Local Rule 56-260, summary judgment may not be granted on that ground alone. See Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993). In Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1031 (9th Cir. 2001), the Ninth Circuit held:

> [T]he district court may determine whether there is a genuine issue of material fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of material fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

**(1). § 1983 Claim for Violation of First and Fourteenth Amendments**

Plaintiff's first § 1983 claim is based on the premise that he has a First and Fourteenth Amendment right to solicit charitable donations in front of the Store because it is open to the general public. Defendants contend they are entitled to summary judgment because Plaintiff does not have a constitutional right to solicit at or in front of the Store. In their moving papers, Defendants focus on the private ownership of the Store, its location and physical attributes, and the limited scope of the invitation to the public, as support for their contention that the Store and the area in front of it do not constitute a public forum that implicates the constitutional right of free speech.

In his opposition, Plaintiff contends that the Store is open to the public and is the same as a shopping center, according to on-line dictionary definitions. Plaintiff further asserts that if the site

was not a shopping center with a public sidewalk, the police would have arrested him and others who, like him, possessed city permits that allowed them to solicit on behalf of charitable organization. Finally, Plaintiff suggests that, if soliciting were illegal, K-mart's "no trespassing" sign would have included the applicable Penal Code section.

**Analysis**

The basic issue is whether Plaintiff has a constitutional right to solicit for charitable donations in the front of the Store. Soliciting funds for charity is a form of speech protected by the First Amendment to the United States Constitution. Village of Schaumberg v. Citizens for a Better Environment, 444 U.S. 620, 620-621, 100 S.Ct. 826 (1980); see A.C.L.U. of Nevada v. City of Las Vegas, 466 F. 3d 784, 792 (9th Cir. 2006)(citations omitted). The First Amendment declares that Congress may make no law abridging the freedom of speech or of the press. U.S. Const., Amend. I. To the extent that Plaintiff's free speech claim is based solely on the First Amendment and Fourteenth Amendments, it must fail, because the First Amendment does not protect speech in a privately owned shopping center. Hudgens v. N.L.R.B., 424 U.S. 507, 513, 519-520, 96 S. Ct. 1029 (1976)(citations omitted)(First Amendment protects free speech against government encroachment, not against private conduct).

However, the California Constitution also contains a free speech provision. The state Constitution provides that "[e]very person may freely speak, write, and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const., art. I, § 2(a). The California Constitution is "more protective, definitive and inclusive of rights to expression and speech" than the First Amendment. Robins v. Pruneyard Shopping Center, 23 Cal. 3d 899, 908, 910 (1979). Under Pruneyard, the California Constitution protects free speech in a privately owned shopping center where the shopping center is the functional equivalent of a traditional public forum. Pruneyard, 23 Cal. 3d at 908.

The Court construes Plaintiff's free speech claim as also being premised upon the California Constitution, and will analyze his claim under Pruneyard and its progeny. Pruneyard implicitly is

1  derived from the public's increasing use of large suburban shopping centers,³ as opposed to
2  individual stores or smaller, urban shopping areas.  Cases decided since Pruneyard have held that
3  individual stores and smaller shopping areas have more latitude to regulate speech on their private
4  property.  See Albertson's, Inc. v. Young, 107 Cal.App.4th 106, 113-116 (2003) (discussing
5  distinction between the Pruneyard shopping center, stand-alone stores, and small malls).  In
6  Albertson's, the state appellate court upheld prior case law that required a balancing test to ascertain
7  whether these smaller shopping areas and/or individual stores were, like the shopping center in
8  Pruneyard, public forums such that governmental and societal interests outweighed the private
9  property owners' rights to regulate activities that they would permit on their property.  Albertson's,
10 107 Cal.App.4th at 118-1123.

11         The pivotal question is whether the Store and the area in front of it have "taken on the
12 attributes of public property."  See Feminist Women's Health Center v. Blythe, (1995) 32 Cal.App.
13 4th 1641, 1660 (1995).  Contrary to Plaintiff's contentions, the fact that the Store is open to the
14 general public does not decide the issue.  Other factors include the nature, purpose, and primary use
15 of the property, the degree to which the property owner has opened up the property for public use,
16 the scope of the property owner's invitation to the public, whether the property has places for people
17 to congregate and spend time together, such as central courtyards, plazas, enclosed walkways, picnic
18 areas, gardens, educational facilities, health clubs, theatres, or restaurants, whether the property has a
19 forum for entertainment, whether an individual store is a single-structure building, whether the store
20 was designed in a manner that people would only come to shop for the goods for sale, and the
21 purposes that motivate people to come to the property.  N.L.R.B. v. Calkins, 187 F.3d 1080, 1090
22 (9th Cir. 1999); Slevin v. Home Depot, 120 F. Supp. 2d 822 (N.D. Cal. 2000); Albertson's, Inc., 107
23 Cal App. 4th at 119-120 (citing Trader Joe's Co. v. Progressive Campaigns, Inc., 73 Cal.App.4th
24 425, 428-434 (1999)).

25 ///
26
27 ─────────────────
28      ³The Pruneyard Shopping Center was a 21-acre shopping center, consisting of 65 retail stores, 10 restaurants, a cinema, and multiple walkways.  Pruneyard, 23 Cal. 3d at 902.

Defendants have submitted evidence sufficient to establish the following facts, each of which relates directly to a factor that the Court must consider to decide the public forum issue.

**A. The Store**

The Store is privately owned and located within a shopping center. The Store consists of a single structure building with approximately 73,000 interior square feet. The Store has only one public entrance and exit, which is located at the front of the Store. The Store is a single-use retail store, specializing in the sale of discount merchandise. The Store contains no theatres or other forms of entertainment. There are no places for people to gather and spend time together. The Store is open to the general public; however, the public invitation to the Store is limited in scope. K-Mart invites the public to come to the Store to purchase goods that are for sale. No evidence has been presented suggesting that the public is invited to the Store to congregate, socialize, or be entertained.

**B. The Shopping Center**

The shopping center where the Store is located contains no courtyards, plazas, enclosed walkways, picnic areas, gardens, educational facilities, health clubs, theatres, or other areas for the public to congregate and spend time together. The other stores in the shopping center include Big Lots, Payless Shoe Source, Dollar Mart, a nail salon, a gas station, and a restaurant. The shopping center has a single parking lot and sidewalks. The parking lot provides contiguous access to each business in the shopping center. The parking lot and sidewalks are for the common use of the property owners, tenants, and customers for movement among the businesses at the center.

**C. No Public Forum**

In Pruneyard, the speech activity occurred in the courtyard of a 21-acre shopping center with 65 shops, 10 restaurants, a cinema, and various areas for people to congregate. Here, unlike Pruneyard, Plaintiff's speech activity occurred in front of the entrance to the Store, and not in place that is intended to be used as a public meeting place or entertainment forum. There is no evidence that the Store or the area in front of it are the hub of activity envisioned in Pruneyard. Similarly, there is no evidence that the public is invited to congregate in the parking lot, sidewalks or other

areas of the shopping center in which the Store is located, nor has any evidence been presented establishing that the shopping center or any part of it is the hub of activity envisioned in Pruneyard.

Defendants have submitted sufficient evidence to establish that the Store and the area in front of the Store are not a public forum. The facts submitted by Defendants are not in dispute, and Plaintiff has failed to produce any specific facts or probative evidence showing there is a genuine issue for trial. The fact that the Store is open to the general public and located in a shopping center does not defeat summary judgment on the public forum issue. Even after construing the facts in the light most favorable to Plaintiff, no triable issue exists regarding whether the Store or the area in front of the Store are the functional equivalent of a traditional public forum. The Store and the area in front of it do not constitute a public forum, therefore Plaintiff did not have a constitutional right to solicit donations in the front of the Store. Accordingly, the Court grants summary judgment to Defendants on this issue.

**(2). Claims re False Arrest**

    **A. Statute of Limitations**

Plaintiff seeks damages under 42 U.S. C. §1983 for false arrest. The Court construes Plaintiff's claim to allege that his Fourth and Fourteenth Amendment rights were violated because he was falsely arrested by Mr. Bloom. Defendants assert that Plaintiff's claims are time-barred by the one year statute of limitations for false imprisonment, California Code of Civil Procedure § 340(c). (Doc. 29, 7:21-24, 8:1-4). Defendants contend that false imprisonment and false arrest are related torts and, therefore, the limitations period for the allegations underlying Plaintiff's complaint, i.e., false arrest, is one year. (Id., 8:10-14). Defendants further aver that the statute of limitations accrues when Plaintiff became aware of his injury, which, in this case, was the date of his alleged false arrest on November 12, 2004. (Id., 8:15-19; see Doc. 33, 7:24-26). Thus, Defendants argue, because Plaintiff did not file his civil rights complaint until October 26, 2006 – approximately two years after his arrest – his complaint in this action was filed after the one-year statute of limitations had expired and he, therefore, could not state a claim based on the allegedly false arrest. (Id., 8:19-25). Plaintiff agrees that false arrest falls within the category of false imprisonment, but does not address whether

he filed his complaint after the statute of limitations had run. (Doc. 33, 7:11-17).

42 U.S. C. § 1983 authorize claims but does not provide a limitations period. When a federal statute authorizes a claim but does not include a limitations period, federal courts may "borrow" the most analogous statute of limitations from either federal or state law. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S. Ct. 2281 (1983). Claims arising under § 1983 are considered personal injury actions for statute of limitation purposes, and the applicable statute of limitations for them is determined by state law. Wilson v. Garcia, 471 U.S. 261, 269, 105 S. Ct. 1938 (1985); Maldonado v. Harris, 370 F. 3d 945, 954 (9th Cir. 2004), cert. denied, 544 U.S. 968, 125 S. Ct. 1725 (2005).

In Wilson, the Supreme Court held that the limitations period for § 1983 actions is the same as the personal injury action limitation period of the state in which the action is brought. Wilson, 471 U.S. at 279. The Supreme Court concluded that 42 U.S.C. § 1988 directs that in choosing a state statute of limitations for § 1983 actions, courts in each state must select the one most applicable for all § 1983 claims, instead of applying different statutes on a case-by-case basis. Wilson, 471 U.S. at 1946-1947. The Supreme Court reasoned that characterizing all § 1983 claims the same way for statute of limitations purposes, instead of using an approach that depends upon the facts and legal theories of each case, best fits the statute's remedial purpose, and furthers federal interests in uniformity, certainty, and minimizes unnecessary litigation. Wilson, 417 U.S. at 1947.

The Ninth Circuit adopted the approach directed in Wilson, and determined that the applicable limitations period for § 1983 claims is contained in California's general personal injury statute of limitations. McDougal v. County of Imperial, 942 F. 2d 668, 672 (9th Cir. 1991)(citations omitted). California's general personal injury statue has undergone many permutations. Prior to 2003, the general statute was Cal. Civ. Proc. Code § 340(3), which provided a one-year period for an "action for libel, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for death of one caused by the wrongful act or neglect of another...." McDougal, 942 F. 2d at 672. Since then, § 340(3) has been replaced by a specific one-year statute of

limitations for false imprisonment, see Cal. Civ. Proc. Code § 340(c),[4] and a two-year statute of limitations for other personal injury torts, see Cal. Civ. Proc. Code § 335.1.[5]

The question presented by Defendants' motion is which statute of limitations to apply - the one year statute or the two-year statute. That question has already been addressed in Owens v. Okure, 488 U.S. 235, 249-250, 109 S. Ct. 573 (1989), where the Supreme Court considered the question of which state statute applies when a state has multiple statutes of limitations for personal injury actions. The Supreme Court determined that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens, 488 U.S. at 249-250. In Del Percio v. Thornsley, 877 F. 2d 785, 786 (9th Cir. 1989) and as discussed in McDougal, the Ninth Circuit examined Owens, and concluded that "§ 340(3) is California's residual or general personal injury statute since the section contains an express 'catchall' provision, covering any 'injury to or death of one caused by the wrongful act or neglect of another." McDougal, 942 F. 2d at 672 (citing Del Percio, 877 F.2d at 786); Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999)(citing Owens, 488 U.S. 235, 239-240 (1989).

McDougal was decided in 1991. As discussed supra, § 340(3) is no longer in effect. Since 2003, California's general or residual statute of limitations for personal injury actions is Cal. Civ. Proc. Code § 335.1, because it contains essentially the same express 'catchall' provision previously included in § 340(3), i.e., it covers any "injury to, or for the death of, an individual caused by the wrongful act or neglect of another." See Thompson v. City of Shasta Lake, 314 F. Supp. 2d 1017, 1023-1024 (E.D. Cal. 2004). Thus, although the limitations period for false arrest and imprisonment claims is one year pursuant to Cal. Civ. Proc. Code § 340(c), Plaintiff's § 1983 claims are governed by the two-year general period set forth in Cal. Civ. Proc. Code § 35.1.

---

[4] Cal.Civ. Proc. Code 340(c) provides in relevant part: "Within one year; An action for libel, consent, false imprisonment, seduction of a person below the age of legal consent...."

[5] Cal. Civ. Proc. Code 335.1 provides, in relevant part: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

Although state law determines the limitations period, federal law governs when a civil rights claim accrues. Wallace, 127 S.Ct. at 1095; Maldonado, 370 F.3d at 955; Morales v City of Los Angeles, 214 F.3d 1151, 1152 (9th Cir. 2000)(citing TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)). "Under federal law, a claim accrues when the Plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado, 370 F.3d at 955 (citations omitted); Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002).

Here, Plaintiff claims that his constitutional rights were violated when he was arrested and jailed on November 12, 2004. It is undisputed that on November 12, 2004, Mr. Bloom effected a private citizen's arrest that resulted in Plaintiff's incarceration. Consequently, in the absence of tolling, Plaintiff's claims accrued on November 12, 2004.[6] Plaintiff filed this action on October 12, 2006, before the two-year limitations period expired. The Court concludes that Plaintiff's complaint was timely filed. Defendants are not entitled to summary judgment on the statute of limitations defense.

**B. Collateral Estoppel**

Defendants argue that Plaintiff is collaterally estopped from bringing a claim alleging false arrest because Plaintiff had an opportunity to raise the validity of his arrest during the state proceedings and cannot relitigate an issue decided in the state proceedings in a later civil proceeding. Defendants assert that California law provides that a finding of probable cause during a preliminary hearing is a final, appealable judgment for purposes of collateral estoppel and Plaintiff's failure to challenge the finding bars him from claiming that there was no basis for the November 12, 2004, citizen's arrest. According to Defendants, all of the elements required to estop Plaintiff from pursuing his false arrest claim are met in this action, and there are no applicable exceptions.

A plaintiff in a civil case may be estopped from litigating an issue that was decided in a prior criminal proceeding. Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411 (1980); see Bugna v.

---

[6] The Court does not need to address the applicability of delayed accrual or tolling of the limitations period while the criminal charges against Plaintiff were pending, because Plaintiff's claims are timely even without delayed accrual or tolling. Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994); Cal. Civ. Proc. Code § 352.1

13

McArthur, 33 F.3d 1054, 1057 (9th Cir. 1994).  Federal courts apply the forum state's law on collateral estoppel in a § 1983 action.  Ayers v. City of Richmond, 895 F.2d 1267, 1270 (9th Cir. 1990).

> The elements for applying the doctrine of collateral estoppel under California law are:
>
> (1) The issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits.

McCutcheon v. City of Montclair, 73 Cal. App. 4th 1138, 1144 (1999).  In McCutchen, a California appellate court held, as a matter of first impression, that once probable cause has been found during a pre-trial hearing in a state criminal action, the detainee is collaterally estopped from filing a § 1983 claim alleging that the police officers arrested him without probable cause.  McCutchen, 73 Cal.App.4th at 1145(citing Haupt v. Dillard, 17 F.3d 285 (9th Cir. 1994)(applying Nevada law)).  "[A]ny issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action."  Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal. 2d 601, 607 (1962).

In McCutcheon, the court reasoned that estoppel was appropriate because the Plaintiff had an opportunity to litigate the issue during a preliminary hearing, and could have immediately filed a writ of habeas corpus challenging the ruling.  McCutchen, 73 Cal.App.4th at 1145-1146; Haupt, 17 F.3d at 287-290.  Moreover, the plaintiff would not be able to raise the probable cause ruling at trial or on direct appeal and, accordingly, the ruling constituted a final judgment that cannot be relitigated.  Haupt, 17 F.3d at 289.   In a case where the prior criminal proceeding included a decision on a motion to suppress based in part on the unlawfulness of a stop, the state appeals court held that '[t]he finding of probable cause by the municipal court for the stop and arrest is dispositive of and conclusive on the issue of false arrest since the probable cause in the criminal proceeding is identical to the probable cause required in a civil complaint."  McGowan v. City of San Diego, 208 Cal. App. 3d. 890, 896 (1989).

Here, it is undisputed that Plaintiff was arrested, arraigned, and convicted of misdemeanor trespass in the state proceedings. It has also been established that Plaintiff's conviction was reversed. However, the Court has not been supplied with a complete transcript of the state proceedings, or a copy of the criminal complaint. Defendants rely on copies of court records that do not reflect that the state court actually decided whether the arrest was valid, <u>i.e.</u>, whether there was probable cause for the arrest.

Defendants' reliance on the presumed validity of an arrest following a preliminary hearing is misplaced, when, as in this case, the criminal charge was a misdemeanor and not a felony. In California, the right to a preliminary hearing applies when the criminal defendant is charged with a felony, not a misdemeanor. Cal. Penal Code §§ 682, 740. Misdemeanor charges are "prosecuted by written complaint under oath subscribed by the complainant." Cal. Pen. Code § 740; see <u>People v. Municipal Court (Pelligrino)</u>, 27 Cal. App. 3d 193, 201 (1972); <u>Childress v. Municipal Court,</u> 8 Cal. App. 3d 611, 613-614 (1970).

Without the ability to examine the complete record of the state proceedings, including the criminal complaint and the extent of the state court's pretrial rulings, the Court is unable to determine whether the issue of probable cause to arrest Plaintiff was litigated in the state proceedings. Accordingly, Defendants are not entitled to summary judgment on the issue of collateral estoppel.

**C. Lawful Citizen's Arrest**

Defendants contend that Plaintiff's claim for false arrest must fail because pursuant to California law, Mr. Bloom effected a lawful citizen's arrest of Plaintiff.

In California, a private person may arrest another for a public offense committed or attempted in his presence. Cal. Penal Code § 837(1). "A private person making a citizen's arrest need not physically take the suspect into custody, but may delegate that responsibility to an officer, and the act of the arrest may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect."  <u>Meyers v. Redwood City</u>, 400 F. 3d 765, 772 (9th Cir. 2005)

15

(quotation and citation omitted).  A public offense is defined as "an act committed . . . in violation of a law forbidding . . . it," which is punishable on conviction by, <u>inter alia</u>, imprisonment or a fine. Cal. Pen. Code § 15(2) and (3).  The alleged crime in this case is misdemeanor trespass, which provides that it is a trespass to occupy property another's property without consent.  Cal. Penal Code § 602 (m).[7]  Conviction on a charge of misdemeanor trespass carries the possibility of a fine, imprisonment, or both.  <u>Id.</u>  California Penal Code § 602 is a public offense within the meaning of California Penal Code §  837.  <u>See</u> <u>People v. Campbell</u>, 27 Cal. App. 3d 849, 854 (Cal. Ct. App. 3rd Dist. 1972)( a misdemeanor is a public offfense).

     Under Federal law, the Fourth Amendment to the United States Constitution requires that a warrantless arrest based on a misdemeanor "be supported by probable cause to believe the arrestee has committed a crime."  <u>See</u> <u>Arpin v. Santa Clara Valley Transportation Agency</u>, 261 F.3d 912, 924 (9th Cir. 2001)(quotation and citation omitted).  Probable cause exists "when, under the totality of the circumstances known to the arresting officers, a reasonably prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." <u>United States v. Buckner</u>, 179 F. 3d 834, 837 (9th Cir. 1999)(citations and quotation omitted).  This is similar to California law, which provides that "an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously  entertain an honest and strong suspicion that the person is guilty of crime.'"  <u>Peng v. Mei Chin Penghu</u>, 335 F. 3d 970, 976 (9th Cir. 2003)(citation omitted).  Plaintiff 's claim fails if

///

---

[7] Plaintiff was originally charged  with Cal. Pen. Code § 602 (l). The charges were later amended to § 602(m). (Doc. 1-2,  pp. 2, 7, 11).  §§ 602 (l) and (m)  provide in relevant part that:

[E]very person who wilfully commits a trespass by any of the following acts is guilty of a misdemeanor:

. . .

(l)Entering any lands under cultivation or enclosed by fence, belonging to another . . ., and

(1)refusing or failing to leave the lands immediately upon being requested by the owner of the land, the owner's agent, or by the person in lawful possession to leave the lands.

(m) Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession.

there was probable cause for his arrest. See Cabrera v. City of Huntington Park, 159 F. 3d 374, 380 (9th Cir. 1998).

Here, there is little dispute about the events that led to Plaintiff's arrest. On November 12, 2004, Plaintiff was soliciting charitable donations in front of the entrance to the Store. K-Mart had a "no solicitation" policy which was posted at the front entrance and exit area of the Store. The Store manager, Mr. Bloom, observed Plaintiff soliciting donations in front of the Store. Mr. Bloom informed Plaintiff that K-Mart had a "no solicitation" policy, which was posted at the front entrance and exit area of the Store. When Plaintiff refused to leave, Mr. Bloom instructed his loss prevention officer to call the police. Mr. Bloom and his loss prevention officer informed the police that a solicitor refused to leave the store premises. When a BPD officer arrived at the premises, Plaintiff continued to refuse to leave the premises. Mr. Bloom then placed Plaintiff under a private citizen's arrest for misdemeanor trespass, pursuant to California Penal Code § 602.

As K-Mart's agent, Mr. Bloom had the legal authority to make a citizen's arrest for misdemeanor trespass. Even after construing the facts of this case in the light most favorable to Plaintiff, no triable issuable of fact exists regarding whether there was probable cause to arrest Plaintiff for misdemeanor trespass. It was objectively reasonable for Mr. Bloom to conclude that Plaintiff was trespassing, and for the BPD officer to honor the citizen's arrest. There was probable cause for the arrest, the citizen's arrest was lawfully made, and Defendants are entitled to summary judgment on this issue.[8]

**CONCLUSION AND ORDER**

Based on the foregoing, the Court ORDERS that:

1. Defendants' motion for summary judgment against Plaintiff is GRANTED as to Plaintiff's claims under 42 U.S.C. § 1983 for alleged violation of his rights under the First and Fourteenth

---

[8] A § 1983 claim has two elements. The conduct that harms the plaintiff must be committed under color of law, and the conduct must deprive the plaintiff of a constitutional or federal statutory right. Ketchum v. Alamenda County, 811 F.2d 1243, 1245 (9th Cir. 1987). Neither party has addressed the color of law element in the summary judgment motion. There is no evidence before the Court establishing that Mr. Bloom was acting under color of law or indicating that there is a triable issue of facts as to this element.

Amendments to the United States Constitution, and as to Plaintiff's claim for violation of his free speech rights under the California Constitution;

    2. Defendants' motion for summary judgment against Plaintiff is GRANTED as to Plaintiff's claims under 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth and Fourteenth Amendments and arising out his alleged false arrest;

    3. Defendants' motion for summary judgment against Plaintiff on the statute of limitations defense and the doctrine of collateral estoppel, are DENIED;

    4. The pre-trial conference and trial dates are VACATED; and

    5. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff and to CLOSE this case.

IT IS SO ORDERED.

Dated:  **April 24, 2008**                                        /s/ Theresa A. Goldner
                                                                                   UNITED STATES MAGISTRATE JUDGE